1

2

3

4

5

6

7

8

9

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13  CHRISTOPHER J. ANTHONY,              )
                                         )
14                 Plaintiff,            )    2:09-cv-01024-GEB-KJM
                                         )
15         v.                            )    ORDER GRANTING DEFENDANT'S
                                         )    MOTION FOR SUMMARY JUDGMENT[*]
16  CELLCO PARTNERSHIP dba VERIZON,      )
    WIRELESS,                            )
17                                       )
                   Defendant.            )
18  _____)

19           Defendant Cellco Partnership dba Verizon Wireless

20  ("Verizon") moves for summary judgment on all claims in Plaintiff's

21  complaint.  Plaintiff alleges he was wrongfully terminated from

22  Verizon on January 15, 2008, based on his disability and in

23  retaliation for filing a California Family Rights Act ("CFRA") claim.

24  Verizon argues Plaintiff was terminated for his inappropriate behavior

25  at a company party on December 14, 2007.

26

27  _____

28       [*]    This matter is deemed suitable for decision without oral
    argument.  E.D. Cal. R. 230(g).

                                    1

1                    **I. STATEMENT OF UNCONTROVERTED FACTS**

2              When Plaintiff was terminated he worked as an operations

3    manager for Verizon in Rancho Cordova, California.  (First Amended

4    Compl. ("FAC") ¶ 1.)  Plaintiff attended a Verizon Wireless dinner for

5    members of the Rancho Cordova leadership team on Friday, December 14,

6    2007, at Rascal's restaurant.  (Statement of Undisputed Facts ("SUF")

7    ¶ 11.)   Before going to the dinner at Rascal's, Plaintiff "went to a

8    pub alone and consumed two beers".  (Id. ¶ 12.)  He then "drove

9    himself to Rascal's and consumed one martini," and partially consumed

10   one beer before dinner commenced.  (Id. ¶ 13.)  The "fourth drink"

11   "was removed from him because he was incapacitated."  (Id.)  During

12   the dinner at Rascal's, Plaintiff "took food out of his mouth and

13   threw it at other people, including the pregnant spouse of a

14   supervisor; (ii) made inappropriate comments and noises at the table;

15   (iii) barked and growled at the table; (iv) inappropriately touched

16   his supervisor, Tamela Velazquez; (v) leaned on Velazquez and fell off

17   his chair; (vi) was unconscious at the table; and (vii) urinated in

18   the public parking lot and . . . on a Verizon Wireless supervisor."

19   (Id. ¶ 16.)  Plaintiff "admits that he has no recollection of the

20   events that took place during the dinner on December 14, 2007", and

21   "has no reason to believe that his coworkers were not telling the

22   truth . . . ."  (Id. ¶¶ 14, 17.)

23              Plaintiff visited the emergency room on Sunday, December 16,

24   2007, and told the medical staff he was "[v]ery exhausted" and

25   physically and mentally "fatigued."  (Id. ¶ 32.)  A blood test taken

26   on December 16, 2007 "showed that Plaintiff had THC

27   (tetrahydrocannabinol) in his system and no other drug."  (Id. ¶ 34.)

28

1  Plaintiff's diagnosis was "consistent with alcohol and marijuana

2  intoxication" and a "[h]angover."  (Id. ¶ 33.)

3          Plaintiff returned to work on Monday, December 17, 2007, at

4  which time Plaintiff sent the following email, with the subject line

5  "Apologies," to the Verizon "leadership team and their spouses":

6
7          Please accept my apologies for my unusual behavior
           at the Leadership dinner the other night.  I was at
           a loss for why I behaved in such an unruly manner
8          that I went to Kaiser on Saturday to have my blood
           checked for abnormalities; which, by the report, it
9          did appear that I may have ingested something into
           my system.
10
           At this point all I can do is ask you all to accept
11         my apologies.

12  (Id. ¶ 18; Nasser Decl. Ex. F.)  Plaintiff also apologized "in-person

13  to Donald Latimore" for "throwing food at Latimore's pregnant wife"

14  and to his supervisor, Tamela Velasquez, for "touch[ing] her

15  inappropriately."  (SUF ¶¶ 20, 21.)

16         Verizon's policies concerning the consumption of alcohol and

17  inappropriate behavior out of the office are codified in a guide

18  entitled "Your Code of Conduct" ("Code of Conduct").  (Id. ¶ 3.)  The

19  Code of Conduct provides, in relevant part:

20         Verizon Wireless employees are required to treat
           customers, fellow employees and vendors with
21         respect, dignity, honesty and fairness. It is
           Verizon Wireless' policy that threatening,
22         insubordinate, violent or obscene behavior by any
           employee will not be tolerated. Conduct that
23         encourages or permits an offensive or hostile work
           environment will not be allowed . . . .
24
           Unprofessional behavior or prohibited conduct that
25         is harmful to the company's performance will not be
           tolerated . . . .
26
           Although alcohol may be served at certain Verizon
27         Wireless functions, events or business meetings if
           authorized by a department vice president or higher
28         level senior manager, consumption at any such event

                                  3

is completely voluntary, should always be in moderation, and never in a manner that would embarrass or harm the company.

(SUF ¶¶ 5, 6; Nasser Decl. Ex. D.)

On December 19, Debria Hall ("Hall"), Director of West Area Operations and Velasquez's direct supervisor, "received an anonymous letter describing the events that took place at the December 14, 2007 dinner at Rascal's."  (SUF ¶ 22.)  Hall faxed the letter to Verizon Human Resources Associate Director Laura Wildemann and Human Resources Manager Veronica Browning ("Browning").  (Nasser Decl. Ex. L Hall Dep. 30:17-31:20.)  On December 21, Verizon's Human Resources Department commenced an investigation, led by Browning, during which Plaintiff stated during an interview "he did not remember what happened [at the dinner] on December 14, 2007."  (SUF ¶¶ 23-24.)  "On January 3, 2008" Hall filled out and emailed to Browning a "termination or separation template" "recommending that [Plaintiff] be separated from Verizon." (Id. ¶ 25; Nasser Decl. Ex. L Hall Dep. 57:9-59:24.)  The final approval for Plaintiff's termination was made on January 8 or 9, 2008. (SUF ¶ 26; Nasser Decl. Ex. L Hall Dep. 115:24-116:5.)

On January 10, 2008, Plaintiff presented Velasquez with a "Kaiser Permanente Visit Verification Form" which stated: "[Plaintiff] can participate in a modified work program starting 1/10/2008 and continuing through 7/10/2008.  If modified work is not available, [Plaintiff] is unable to work for this time period." (SUF ¶ 35; Nasser Decl. Ex. G.)  The form also stated that Plaintiff "may not operate a motor vehicle for at least 6 months."  (Id.)  Verizon then advised Plaintiff to "stay at home until [Verizon] could assess the parameters of his modified duty."  (Id. ¶ 40.)

1    Hall and Browning called Plaintiff on January 15, 2008 and

2 officially terminated Plaintiff's employment with Verizon.  (Id. ¶

3 26.)  Hall and Browning "explained to [Plaintiff] that [Verizon's]

4 investigation revealed he had violated [the Code of Conduct].  [They]

5 explained that his behavior was offensive to the participants of the

6 event as well as the servers and patrons of the restaurant."  (Plt.'s

7 Ex. 2, VZW ANT000149.)

8    Plaintiff alleges the following five claims in his first

9 amended complaint: (1) disability discrimination in violation of

10 California Government Code section 12940(a) ("FEHA"); (2) failure to

11 make a reasonable accommodation in violation of FEHA section 12940(m);

12 (3) retaliation for exercising rights under the CFRA; (4) violation of

13 the CFRA; and (5) wrongful termination in violation of public policy.

14                         **II.   LEGAL STANDARD**

15    A party seeking summary judgment bears the initial burden of

16 demonstrating the absence of a genuine issue of material fact for

17 trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  If

18 this burden is satisfied, "the non-moving party must set forth, by

19 affidavit or as otherwise provided in Rule 56 [of the Federal Rules of

20 Civil Procedure], specific facts showing that there is a genuine issue

21 for trial."  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors

22 Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quotations and citation

23 omitted).  This requires that the non-moving party "come forward with

24 facts, and not allegations, [that] controvert the moving party's

25 case."  Town House, Inc. v. Paulino, 381 F.2d 811, 814 (9th Cir. 1967)

26 (citation omitted); see also Beard v. Banks, 548 U.S. 521, 527 (2006)

27 (finding that a party opposing summary judgment who "fail[s] [to]

28 specifically challenge the facts identified in the [moving party's]

1  statement of undisputed facts . . . is deemed to have admitted the

2  validity of [those] facts . . . .").  "Mere argument does not

3  establish a genuine issue of material fact to defeat summary

4  judgment."  <u>MAI Sys. Corp. v. Peak Computer, Inc.</u>, 991 F.2d 511, 518

5  (9th Cir. 1993).  "All reasonable inferences must be drawn in favor of

6  the non-moving party."  <u>Bryan v. McPherson</u>, 590 F.3d 767, 772 (9th

7  Cir. 2009).

8                      **III.  DISCUSSION**

9                   **A.  Disability Discrimination**

10         Verizon seeks summary judgment on Plaintiff's disability

11  discrimination claim, arguing Plaintiff cannot establish he suffered

12  from a disability, cannot establish his termination was *because* of a

13  disability, and cannot show that Verizon's legitimate reason for

14  firing him was pretextual.  (Mot. for Summ. J. 12:4-12.)  Plaintiff

15  counters that "a jury may infer that the behavior [Plaintiff]

16  ultimately displayed at the work event was conduct resulting from his

17  disability, and that Verizon knew that this behavior resulted from a

18  medical physical or mental disability" when it terminated him on

19  January 15, 2008.  (Plt.'s Opp'n 2:14, 10:10-11.)

20          Claims for disability discrimination under FEHA are analyzed

21  "under a three-step framework."  <u>Brundage v. Hahn</u>, 57 Cal. App. 4th

22  228, 236 (1997).  FEHA proscribes both "disparate treatment

23  discrimination" and "disparate impact discrimination."  <u>Scotch v. Art</u>

24  <u>Institute of California-Orange Cnty., Inc.</u>, 173 Cal. App. 4th 986,

25  1002 (2009).  Plaintiff alleges disparate treatment discrimination.

26          California uses the three-stage burden-shifting
           test established by the United States Supreme Court
27         for trying claims of discrimination based on a
           theory of disparate treatment.  This so-called
28         <u>McDonnell Douglas</u> test reflects the principle that

1
2
3
4
5
6

             direct evidence of intentional discrimination is
rare, and that such claims must usually be proved
circumstantially.  Thus, by successive steps of
increasingly narrow focus, the test allows
discrimination to be inferred from facts that
create a reasonable likelihood of bias and are not
satisfactorily explained.  Under the <u>McDonnell
Douglas</u> test, the plaintiff has the initial burden
of establishing a prima facie case of
discrimination.

<u>Id.</u> at 1004 (internal citations and quotations omitted).

7
8
9
10
11
12
13

             If this burden is satisfied, the employer must then
offer a legitimate nondiscriminatory reason for the
adverse employment decision.  If the employer
satisfies this burden, plaintiff bears the burden
of proving the employer's proffered reason was
pretextual.  Plaintiff can establish a prima facie
disability discrimination case by proving that: (1)
plaintiff suffers from a disability; (2) plaintiff
is a qualified individual; and (3) plaintiff was
subjected to an adverse employment action because
of the disability.

<u>Brundage</u>, 57 Cal. App. 4th at 236 (1997) (internal citations omitted).

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

             A disability includes a physical or mental condition which "limit[s] a major life activity," such as work.  Cal. Gov. Code § 12926 (i), (k).  Plaintiff indicates his disability is that he was drugged with marijuana by an unnamed individual and "the THC which was found in his blood . . . may have been the catalyst which began the manifestation" of symptoms of Plaintiff's "anxiety, depression, and/or bipolar disorder."  (Plt.'s Opp'n 7:20-22.)  However, Plaintiff has not presented evidence from which a reasonable inference could be drawn that he was drugged with marijuana; nor has he presented evidence suggesting that marijuana consumption is capable of triggering symptoms of his stated disabilities.  Plaintiff's evidence opposing the motion includes a declaration from his physician Doctor Linda Baryliuk in which this physician avers: "substance misuse does not cause bipolar disorder."  (Baryliuk Decl. ¶ 5.)  Further,

1  Plaintiff has not presented evidence showing he was ever diagnosed

2  with bipolar disorder; nor has Plaintiff controverted the evidence

3  showing Plaintiff's behavior was the result of alcohol consumption

4  with evidence permitting a reasonable inference that his behavior at

5  the dinner was caused by symptoms of bipolar disorder, anxiety, or

6  depression.[1]  Since Plaintiff has not shown he "suffers from a

7  disability," he has failed to establish a prima facie case of

8  disability discrimination.  Brundage, 57 Cal. App. 4th at 236.

9          Assuming *arguendo* Plaintiff met his burden of establishing a

10 prima facie case of disability discrimination, Plaintiff has not

11 demonstrated that Verizon's reason for terminating Plaintiff was

12 pretextual.  Verizon has presented evidence showing that Plaintiff was

13 terminated because his behavior at the December 14, 2007 dinner

14 violated its Code of Conduct, which is a reason Plaintiff acknowledged

15 in his deposition testimony as follows: "Q: "Why were you terminated

16 from Verizon? A: Because of my inappropriate behavior."  (Nasser Decl.

17 Ex. B Anthony Depo.; see also Plts.' Ex. 2, VZW ANT000149 (documenting

18 phone call in which Plaintiff was told he was terminated for violating

19 Code of Conduct).)  Plaintiff has not countered with evidence from

20 

21         [1]    Plaintiff relies in his opposition on significant portions
   of depositions that have not been presented by either party. (See,
22 e.g., Plaintiff's Opp'n 5:27-6:5; 9:20-28; 11:1-7; 16:16-20; 17:20-25;
   19:1-9; 21:26-22:21; 23:4-23, relying on portions of Doctor Soonjae
23 Kwon, Doctor Linda Baryliuk, Christine Clark, Reuben Gonzalez, Daniel
   Hess, and Debria Hall's depositions that are not part of the summary
24 judgment record.)  Plaintiff's ex parte application to offer
   additional evidence was granted over the objection of Verizon, and the
25 briefing schedule was extended accordingly (Docket No. 22); yet
   Plaintiff has failed to offer an explanation for the absence of the
26 deposition evidence cited throughout his opposition.  Since "[t]he
   document[s] on which [Plaintiff] relies . . . [were] not submitted as
27 part of the summary judgment record, [the Court will] not consider
   [them]."  In re Citric Acid Litig., 191 F.3d 1090, 1101-02 (9th Cir.
28 1999).

8

1  which a reasonable inference could be drawn that Verizon's reason for

2  firing him was pretextual.  See Guz v. Bechtel Nat'l, Inc., 24 Cal.

3  4th 317, 357 (2000) (explaining that after an employer proffers a

4  legitimate reason for its employment action, the employee must

5  "point[] to evidence which nonetheless raises a rational inference

6  that intentional discrimination occurred"); Coghlan v. Am. Seafoods

7  Co., 413 F.3d 1090, 1095-96 (9th Cir. 2005) (circumstantial evidence

8  "must be 'specific and substantial' to defeat employer's motion for

9  summary judgment").  Therefore, Verizon's motion for summary judgment

10 on Plaintiff's disability discrimination claim is granted.

**B.   Reasonable Accommodation**

12         Verizon also seeks summary judgment on Plaintiff's

13 reasonable accommodation claim, arguing Plaintiff "cannot establish

14 the existence of a disability [and he] fails to establish any specific

15 need or request for an accommodation."  (Mot. for Summ. J. 17:7-9.)

16 Plaintiff counters his "doctors ordered a 'modified' work schedule,

17 the contours of which could have been more thoroughly developed had

18 Verizon not immediately fired him."  (Plt.'s Opp'n 11:24-26.)

19         Under FEHA, it is unlawful for an employer "to fail to make

20 reasonable accommodation for the known physical or mental disability

21 of an . . . employee."  Cal. Gov. Code § 12940(m).  "The elements of a

22 failure to accommodate claim are (1) the plaintiff has a disability

23 under FEHA, (2) the plaintiff is qualified to perform the essential

24 functions of the position, and (3) the employer failed to reasonably

25 accommodate the plaintiff's disability."  Scotch, 173 Cal. App.4th at

26 1009-10.

27         Plaintiff has not shown that he "has a disability under

28 FEHA."  Id.  Further, Plaintiff has not alleged in his complaint nor

9

1  stated in his opposition what accommodation he did not receive.  It is

2  undisputed that Plaintiff's January 10, 2008 "Kaiser Permanent Visit

3  Verification Form" stated Plaintiff must either participate in a

4  modified work schedule or not work at all.  (SUF ¶ 35; Nasser Decl.

5  Ex. G.)  However, the form did not clarify the contours of the

6  "modified work program."  The form also stated that Plaintiff "may not

7  operate a motor vehicle for at least 6 months"; however, Plaintiff

8  "admits this is not an 'essential function of the job held'" and does

9  not argue Verizon failed to accommodate this aspect of Plaintiff's

10  disability.  (Plt.'s Opp'n 12:14-15.)  When Plaintiff was contacted by

11  one of his supervisors on January 11, 2008, Plaintiff "stated that he

12  didn't know what the doctor meant by modified work duty."  (Plt.'s Ex.

13  5 VZW ANT000719.)  It is undisputed that Verizon then advised

14  Plaintiff to "stay at home until [Verizon] could assess the parameters

15  of his modified duty."  (SUF ¶ 40.)

16         "It is an employee's responsibility to understand his or her

17  own physical or mental condition well enough to present the employer

18  at the earliest opportunity with a concise list of restrictions which

19  must be met to accommodate the employee."  Jensen v. Wells Fargo Bank,

20  85 Cal. App. 4th 245, 266 (2000).  "[A]n employee can't expect the

21  employer to read his mind and know he secretly wanted a particular

22  accommodation and sue the employer for not providing it."  King v.

23  Untied States Parcel Serv., 152 Cal. App. 4th 426, 443 (2007).

24  "[I]f a plaintiff wants [his] employer to consider the specific nature

25  of [his] disability in crafting an accommodation, the burden rests on

26  the plaintiff to inform the employer of those restrictions . . . .  An

27  employer cannot accommodate an employee's disability if it does not

28  know how that disability affects the employee.  In this case,

10

1  Defendant accommodated Plaintiff as best it could by placing [him] on

2  disability leave." Goos v. Shell Oil Co., 2010 WL 1526284, *12 (N.D.

3  Cal. 2010).  Since Plaintiff has not shown he has a disability under

4  FEHA or that Verizon failed to reasonably accommodate his disability,

5  Verizon's motion for summary judgment on Plaintiff's reasonable

6  accommodation claim is granted.

7                    **C.   Retaliation Under the CFRA**

8            Verizon also seeks summary judgment on Plaintiff's

9  retaliation claim, arguing Plaintiff "cannot establish any causal

10 nexus between his request for CFRA leave and his termination from

11 employment."  (Mot. for Summ. J. 18:25-26.)  Plaintiff counters

12 "instead of granting [Plaintiff's] requested leave, [Verizon]

13 terminated him."  (Plt.'s Opp'n 15:2.)

14           "CFRA generally provides that it is unlawful for an employer

15 to refuse an employee's request for up to 12 weeks of 'family care and

16 medical leave' in a year.  An employer is also forbidden from

17 discharging or discriminating against an employee who requests family

18 or medical leave." Gibbs v, Am. Airlines, Inc., 74 Cal. App. 4th 1, 6

19 (1999) (citing Cal. Gov. Code § 12945.2(a)).  To prove "retaliation in

20 violation of CFRA" a Plaintiff must show: "(1) the defendant was an

21 employer covered by CFRA; (2) the plaintiff was an employee eligible

22 to take CFRA leave; (3) the plaintiff exercised [his] right to take

23 leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an

24 adverse employment action . . . because of [his] exercise of [his]

25 right to CFRA leave." Dudley v. Dep't of Transp., 90 Cal. App. 4th

26 255, 261 (2001).

27           The parties do not dispute that Verizon and Plaintiff are

28 each covered by the CFRA and that Plaintiff exercised his right to

1 request leave under the CFRA; rather, they dispute whether Plaintiff

2 was fired *because of* his request for leave.  Plaintiff argues the

3 "temporal proximity" of his request and termination shows he was fired

4 for filing his CFRA claim.  Plaintiff argues he submitted his CFRA

5 claim on January 9, 2008 and that the decision to terminate him was

6 not made until January 10, 2008 or later.  (Plt.'s Opp'n 19:19-20:4.)

7 However, Plaintiff has not submitted evidence from which a reasonable

8 inference could be drawn to support this chronology.  Plaintiff has

9 not countered Verizon's evidence showing that it was not aware of

10 Plaintiff's CFRA claim until January 10.  (SUF ¶ 35; Nasser Decl. Ex.

11 B Anthony Depo. 125:22-126:10; Nasser Decl. Ex. F.)  Plaintiff

12 presents a letter from MetLife Disability to Plaintiff dated January

13 9, 2009; however, this letter does not show that officials at *Verizon*

14 were aware of Plaintiff's CFRA claim.  (Plt.'s Ex. VZW ANT000794; see

15 also Nasser Decl. Ex. K Gonzalez Depo. ("MetLife will make th[e]

16 determination" whether to grant FMLA or CFRA leave).)  Further,

17 Plaintiff has not countered Hall's deposition testimony that "the

18 final approval . . . for [Plaintiff's] termination" came on "either

19 the 8th or 9th of January" while she was in "a two-day leadership

20 meeting."  (Nasser Decl. Ex. L Hall Depo. 115:24-116:5.)  Lastly, it

21 is undisputed that Browning asked Hall to prepare a template

22 recommending Plaintiff's termination, and that Hall prepared it on

23 January 3, 2008, after Browning had "concluded all of the

24 investigation" with the exception of "a couple more calls [including

25 to] Rascal's [restaurant]."  (SUF ¶ 25; Nasser Decl. Ex. L Hall Depo.

26 57:9-59:24.)  Further, whether Verizon waited until January 8 or 9 to

27 make the final decision to terminate Plaintiff is insufficient to

28 create an inference of retaliation since the uncontroverted evidence

1 | shows Verizon was investigating whether Plaintiff should be terminated
2 | before those dates.  See Clark Cnty. Sch. Distr. v. Breeden, 532 U.S.
3 | 268, 272 (2001) (finding employer's knowledge of a lawsuit prior to
4 | transferring employee "immaterial" to retaliation claim "in light of
5 | the fact that [the employer] was contemplating the transfer before it
6 | learned of the suit" and "proceeding along lines previously
7 | contemplated, though not yet definitively determined, is no evidence
8 | whatever of causality").

9 | Plaintiff also argues "derogatory comments about the
10 | protected activity" show he was fired for filing his CFRA claim.
11 | (Plt.'s Opp'n 21:6-15.)  Plaintiff presents emails sent between human
12 | resources staff members dated January 10 and 14, 2008, which state
13 | "[Plaintiff] called me claiming that his doctor has him out on
14 | disability" and, "Is [Plaintiff's] doctor aware of what his job
15 | entails?"  (Plt.'s Ex. 6 VZW ANT000720, 732.)  However, Plaintiff has
16 | not sufficiently explained how these statements are derogatory or how
17 | they support an inference of retaliation.  Lastly, Plaintiff argues
18 | Verizon has an "unspoken policy of retribution for taking medical
19 | leave."  (Plt.'s Opp'n 27:3-4.)  However, Plaintiff supports this
20 | argument by citing to portions of his deposition that have not been
21 | presented to the Court and are therefore not part of the summary
22 | judgment record.  See In re Citric Acid Litig., 191 F.3d at 1101-02
23 | (declining to consider evidence not submitted as part of summary
24 | judgment record).  Since Plaintiff has failed to raise a genuine issue
25 | of material fact that he was retaliated against for filing his CFRA
26 | claim, Verizon's motion for summary judgment on this claim is granted.
27 |
28 |

1                                **D.   CFRA**

2              Verizon seeks summary judgment on Plaintiff's CFRA claim,

3     arguing Plaintiff was not entitled to protection from termination "for

4     reasons not related to his CFRA claim."   (Mot. for Summ. J. 20:4-15.)

5     Plaintiff responds "Verizon did not fulfill its obligations under CFRA

6     of guaranteeing [Plaintiff] a position" after he took leave under

7     CFRA.   (Plt.'s Opp'n 3:5-7.)   "[A]n employee who requests CFRA leave

8     or is on leave 'has no greater right to reinstatement or other

9     benefits and conditions of employment' than an employee who remains at

10    work."   Neisendorf v. Levi Strauss & Co., 143 Cal. App. 4th 509, 519

11    (2006) (quoting California Code Regs. title 2, § 7297.2(c)(1)).   "For

12    this reason, even though [Plaintiff] took CFRA leave, [Plaintiff] had

13    no greater protection against [his] employment being terminated for

14    reasons not related to [his] CFRA request than any other employee at

15    [Verizon]."   Id.   Since Plaintiff has failed to present evidence

16    sufficient to permit drawing a reasonable inference that Verizon's

17    stated reason for firing him was pretextual, Plaintiff has "failed to

18    establish the requisite causal connection between [his] protected

19    actions in taking [] CFRA . . . leave and the termination of [his]

20    employment."   Id.   Therefore, Verizon's motion for summary judgment on

21    Plaintiff's CFRA claim is granted.

22            **E.   Wrongful Termination in Violation of Public Policy**

23            Verizon also seeks summary judgment on Plaintiff's wrongful

24    termination in violation of public policy claim, arguing since

25    Plaintiff's underlying claims fail, "then so too must his claim for

26    wrongful termination in violation of public policy."   (Mot. for Summ.

27    J. 20:23-25.)   Plaintiff counters he has stated viable claims under

28    the CFRA and FEHA, and therefore he has stated a wrongful termination

                                       14

1 │ in violation of public policy claim.  (Plt.'s Opp'n 30:27-31:2.)  "The

2 │ parties . . . agree that if Plaintiff's discrimination claims fail,

3 │ [his] claim for wrongful termination in violation of public policy

4 │ also fails."  <u>Sanchez v. Corr. Corp. of Am.</u>, 2006 WL 3531735, *9 (E.D.

5 │ Cal. 2006).  Since Plaintiff has failed to raise a genuine issue of

6 │ material fact with respect to his FEHA and CFRA claims, his wrongful

7 │ termination claim also fails.  See <u>Hanson v. Lucky Stores, Inc.</u>, 74

8 │ Cal. App. 4th 215, 229 (1999) (stating "because [Plaintiff's] FEHA

9 │ claim fails, his claim for wrongful termination in violation of public

10 │ policy fails").

11 │ <center>**IV.  Conclusion**</center>

12 │         For the stated reasons, Verizon's motion for summary

13 │ judgment is granted.  This action shall be closed.

14 │ Dated:  August 27, 2010

15 │

16 │ _____
     │ GARLAND E. BURRELL, JR.

17 │ United States District Judge

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

26 │

27 │

28 │