IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRISTOPHER J. ANTHONY, | ) | |
| Plaintiff, | ) | 2:09-cv-01024-GEB-KJM |
| v. | ) | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| CELLCO PARTNERSHIP dba VERIZON, WIRELESS, | ) | |
| Defendant. | ) | |

Defendant Cellco Partnership dba Verizon Wireless ("Verizon") moves for summary judgment on all claims in Plaintiff's first amended complaint. Plaintiff alleges Verizon wrongfully terminated him on January 15, 2008 based on his disability, and that his termination was retaliation due to his request for leave under the California Family Rights Act ("CFRA"). Verizon disagrees, arguing Plaintiff was terminated because of his inappropriate behavior at a company party on December 14, 2007.

Plaintiff alleges the following five claims in his first amended complaint: (1) disability discrimination in violation of California Government Code section 12940(a) ("FEHA"); (2) failure to make a reasonable accommodation in violation of FEHA section 12940(m); (3) retaliation for exercising rights under the CFRA; (4) violation of the CFRA; and (5) wrongful termination in violation of public policy.

## I. STATEMENT OF UNCONTROVERTED FACTS

Plaintiff was terminated from his position as an operations manager for Verizon in Rancho Cordova, California. Verizon states Plaintiff was terminated based on his activities at a Verizon dinner on Friday, December 14, 2007, held at Rascal's restaurant for members of the Rancho Cordova leadership team. (Statement of Undisputed Facts ("SUF") ¶ 11.) Before Plaintiff arrived at Rascal's, he "went to a pub alone and consumed two beers". Id. ¶ 12. He then "drove himself to Rascal's and consumed one martini," and partially consumed one beer before dinner commenced. Id. ¶ 13. The "fourth drink" "was removed from him because he was incapacitated." Id. During the dinner, Plaintiff "(i) took food out of his mouth and threw it at other people, including the pregnant spouse of a supervisor; (ii) made inappropriate comments and noises at the table; (iii) barked and growled at the table; (iv) inappropriately touched his supervisor, Tamela Velazquez; (v) leaned on Velazquez and fell off his chair; (vi) was unconscious at the table; and (vii) urinated in the public parking lot and . . . on a Verizon Wireless supervisor." Id. ¶ 16. Plaintiff "has no recollection of the events that took place during the dinner on December 14, 2007", and "has no reason to believe that his coworkers were not telling the truth [.]" Id. ¶¶ 14, 17.

Two days later, on Sunday December 16, 2007, Plaintiff went to an emergency room complaining that he was "[v]ery exhausted" and physically and mentally "fatigued." Id. ¶ 32. "Plaintiff's medical records relating to his December 16, 2007 visit diagnosed his condition as '[c]onsistent with alcohol and marijuana intoxication. Hangover the following day' and 'alcohol intoxication', 'cannabis intoxication'." Id. ¶ 33. A blood test taken on December 16, 2007, "showed that Plaintiff

2

had THC (tetrahydrocannabinol) in his system and no other drug." Id. ¶ 34.

Plaintiff returned to work on Monday, December 17, 2007, at which time Plaintiff sent the following email to the Verizon leadership team and their spouses, with the word "Apologies" in the subject line:

> Please accept my apologies for my unusual behavior at the Leadership dinner the other night. I was at a loss for why I behaved in such an unruly manner that I went to Kaiser on Saturday [sic] to have my blood checked for abnormalities; which, by the report, it did appear that I may have ingested something into my system.
>
> At this point all I can do is ask you all to accept my apologies.

(Id. ¶ 18; Nasser Decl. Ex. F.) Plaintiff also apologized "in-person to Donald Latimore" for "throwing food at Latimore's pregnant wife" and to his supervisor, Tamela Velasquez, for "touch[ing] her inappropriately." (SUF ¶¶ 20-21.)

On December 19, Debria Hall ("Hall"), Director of West Area Operations and Velasquez's direct supervisor, "received an anonymous letter describing the events that took place at the December 14, 2007 dinner at Rascal's." Id. ¶ 22. Hall faxed the letter to Verizon Human Resources Associate Director Laura Wildemann and Human Resources Manager Veronica Browning ("Browning"). (Nasser Decl. Ex. L Hall Dep. 30:17-31:20.) On December 21, Verizon's Human Resources Department commenced an investigation, led by Browning, during which Plaintiff stated in an interview: "he did not remember what happened [at the dinner] on December 14, 2007." (SUF ¶¶ 23-24.) "On January 3, 2008" Hall filled out and emailed to Browning a "termination or separation template" "recommending that [Plaintiff] be separated from Verizon." (Id. ¶ 25; Nasser Decl. Ex. L Hall Dep. 57:9-59:24.) The final approval for

1  Plaintiff's termination was made on January 8 or 9, 2008. (SUF ¶ 26;
2  Nasser Decl. Ex. L Hall Dep. 115:24-116:5.)
3         On January 10, 2008, Plaintiff presented Velasquez with a
4  "Kaiser Permanente Visit Verification Form" which stated: "[Plaintiff]
5  can participate in a modified work program starting 1/10/2008 and
6  continuing through 7/10/2008. If modified work is not available,
7  [Plaintiff] is unable to work for this time period." (SUF ¶ 35; Nasser
8  Decl. Ex. G.) The form also stated Plaintiff "may not operate a motor
9  vehicle for at least 6 months." Id. Verizon then advised Plaintiff to
10 "stay at home until [Verizon] could assess the parameters of his
11 modified duty." Id. ¶ 40.
12        Hall and Browning called Plaintiff on January 15, 2008 and
13 officially terminated Plaintiff's employment with Verizon. Id. ¶ 28.
14 Hall and Browning "explained to [Plaintiff] that [Verizon's]
15 investigation revealed he had violated [Verizon's Code of Conduct and]
16 . . . that his behavior was offensive to the participants of the event
17 as well as the servers and patrons of the restaurant." (Pl.'s Ex. 2, VZW
18 ANT000149.) Verizon's policies concerning the consumption of alcohol and
19 inappropriate behavior out of the office are stated in a guide entitled
20 "Your Code of Conduct" ("Code of Conduct"). (SUF ¶ 3.) The Code of
21 Conduct states in relevant part:

> Verizon Wireless employees are required to treat customers, fellow employees and vendors with respect, dignity, honesty and fairness. It is Verizon Wireless' policy that threatening, insubordinate, violent or obscene behavior by any employee will not be tolerated. Conduct that encourages or permits an offensive or hostile work environment will not be allowed . . . .
>
> Unprofessional behavior or prohibited conduct that is harmful to the company's performance will not be tolerated . . . .

4

1
2
3
4
>Although alcohol may be served at certain Verizon Wireless functions, events or business meetings if authorized by a department vice president or higher level senior manager, consumption at any such event is completely voluntary, should always be in moderation, and never in a manner that would embarrass or harm the company.

(SUF ¶¶ 5-6; Nasser Decl. Ex. D.)

## II.   LEGAL STANDARD

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). If this burden is satisfied, "the non-moving party must set forth . . . specific facts showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quotations and citation omitted). "All reasonable inferences [that can be drawn from the evidence] must be drawn in favor of the non-moving party." Bryan v. McPherson, 590 F.3d 767, 772 (9th Cir. 2009). However, "[m]ere argument does not establish a genuine issue of material fact to defeat summary judgment." MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 518 (9th Cir. 1993).

## III.   DISCUSSION

### A.   Disability Discrimination in Violation of FEHA

Verizon argues it is entitled to summary judgment on Plaintiff's disability discrimination claim since Plaintiff cannot establish he suffered from a disability, and because Verizon had a legitimate reason for firing him. (Mot. for Summ. J. 12:4-12.) Plaintiff counters that "a jury may infer that [his] behavior . . . displayed at the work event was conduct resulting from his disability, and that Verizon knew that this behavior resulted from a medical physical or

mental disability" when it terminated him on January 15, 2008. (Pl.'s Opp'n 2:14, 10:10-11.)

Disability discrimination claims are analyzed "under a three-step framework." Brundage v. Hahn, 57 Cal. App. 4th 228, 236 (1997). "First, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. The employer then must offer a legitimate nondiscriminatory reason for the adverse employment decision. Finally, the plaintiff bears the burden of proving the employer's proffered reason was pretextual." Id.

Plaintiff argues "[a]t the time of termination, two doctors believed [his] inappropriate acts could have been a manifestation of seizures." (Pl.'s Opp'n 5:27-28.) Plaintiff also argues that his primary physician believed his "strange acts could have been caused by depression or could have been stress-related." Id. 6:1-2. Plaintiff's primary physician testified she "suspected that stress and depression might be a diagnosis." (Pl.'s Mot. for Relief Ex. A Baryliuk Dep. 30:15-22.) Plaintiff also argues that approximately nine months after the December 14, 2007 dinner, he was "diagnosed with bipolar disorder after continuous months of doctors visits." (Pl.'s Opp'n 6:2-3). However, Plaintiff presents no evidence that he suffered from bi-polar disorder on the night of the dinner, that a bi-polar disorder is the reason he acted as he did on the night of the dinner, that he was suffering from a bi-polar disorder when he was terminated, or that his bi-polar disorder is the real reason why Verizon fired him. Plaintiff's evidence is comprised of speculative opinions from which reasonable inferences cannot be drawn supporting the proposition that Verizon employees knew Plaintiff's strange acts could have been caused by bi-polar disorder, depression, stress, and/or a seizure. "[C]onjecture or guesswork will

1 not suffice" to create a factual dispute defeating summary judgment.
2 <u>Brown v. Industrial Acc. Commission of Cal.</u>, 44 Cal. App. 2d 6, 13
3 (1941); <u>see also</u> <u>Nelson v. Pima Cmty. Coll.</u>, 83 F.3d 1075, 1081-82 (9th
4 Cir. 1996) (stating "mere allegation and speculation do not create a
5 factual dispute for purposes of summary judgment.").

6 Further, Plaintiff has not shown that Verizon's stated reason
7 for his termination was pretextual. "[T]he issue of pretext does not
8 address the correctness or desirability of reasons offered for
9 employment decisions. Rather, it addresses the issue of whether the
10 employer honestly believes in the reasons it offers." <u>McCoy v. WGN</u>
11 <u>Continental Broadcasting Co.</u>, 957 F.2d 368, 373 (7th Cir. 1992) (citing
12 <u>Visser v. Packer Engineering Associates, Inc.</u>, 924 F.2d 655, 658-59 (7th
13 Cir. 1991) (stating that even firing for an unethical reason is not
14 evidence of age discrimination). An employer's stated nondiscriminatory
15 "reasons need not necessarily have been wise or correct." <u>Guz v. Bechtel</u>
16 <u>Nat'l, Inc.</u>, 24 Cal. 4th 317, 358 (2000). "While the objective
17 soundness of an employer's proffered reasons supports their credibility
18 . . . , the ultimate issue is simply whether the employer acted with *a*
19 *motive to discriminate illegally*." <u>Id.</u> (emphasis in original). "Thus,
20 'legitimate' reasons in this context are reasons that are *facially*
21 *unrelated to prohibited bias*, and which, if true, would thus preclude a
22 finding of *discrimination*." <u>Id.</u> (emphasis in original) (citation
23 omitted).

24 Moreover, an inference of intentional discrimination
cannot be drawn solely from evidence, if any, that the
25 company lied about its reasons. The pertinent statutes do
not prohibit lying, they prohibit discrimination. Proof
26 that the employer's proffered reasons are unworthy of
credence may "considerably assist" a circumstantial case
27 of discrimination, because it suggests the employer had
cause to hide its true reasons. Still, there must be
28 evidence supporting a rational inference that *intentional*
*discrimination, on grounds prohibited by the statute, was*

7

> *the true cause* of the employer's actions. Accordingly, the great weight of federal and California authority holds that an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory.

Id. at 360-61 (emphasis in original) (citation omitted).

"[E]ven where the plaintiff has presented a legally sufficient prima facie case of discrimination, and has also adduced some evidence that the employer's proffered innocent reasons are false, the fact finder is not *necessarily* entitled to find in the plaintiff's favor." Id. at 361-62 (emphasis in original). "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. These include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case[.]" Id. at 362.

Here, the record contains no direct or circumstantial evidence raising a reasonable inference that Verizon fired Plaintiff on grounds of prohibited bias. Since Plaintiff has not raised a triable issue that Verizon's proffered reason for its actions were a pretext for prohibited discrimination, Verizon's motion for summary judgment on Plaintiff's disability discrimination claim is granted.

### B. Reasonable Accommodation Under FEHA

Verizon also argues it is entitled to summary judgment on Plaintiff's reasonable accommodation claim since Plaintiff has not "establish[ed] the existence of a disability," or "any specific need or request for an accommodation." (Mot. for Summ. J. 17:7-9.) Plaintiff counters his "doctors ordered a 'modified' work schedule, the contours

8

1  of which could have been more thoroughly developed had Verizon not
2  immediately fired him." (Pl.'s Opp'n 11:24-26.)
3         FEHA proscribes an employer from "fail[ing] to make reasonable
4  accommodation for the known physical or mental disability of an . . .
5  employee." Cal. Gov. Code § 12940(m). "The elements of a failure to
6  accommodate claim are (1) the plaintiff has a disability under FEHA, (2)
7  the plaintiff is qualified to perform the essential functions of the
8  position, and (3) the employer failed to reasonably accommodate the
9  plaintiff's disability." Scotch v. Art Institute of California-Orange
10 Cnty., Inc., 173 Cal. App. 4th 986, 1009-10 (2009).
11        It is undisputed that "[o]n January 10, 2008, Plaintiff
12 presented Velazquez [at Verizon] with a document titled 'Kaiser
13 Permanente Visit Verification Form' which provided, in pertinent part,
14 that 'Christopher Anthony can participate in a modified work program
15 starting 1/10/2008 and continuing through 7/10/2008. If modified work is
16 not available, Christopher Anthony is unable to work for this time
17 period.'" (SUF ¶ 35; Nasser Decl. Ex. G.) However, the form did not
18 clarify the contours of the "modified work program." The form also
19 stated that Plaintiff "may not operate a motor vehicle for at least 6
20 months"; however, Plaintiff "admits this is not an 'essential function
21 of the job held.'" (Pl.'s Opp'n 12:14-15.) Plaintiff was contacted by
22 one of his supervisors on January 11, 2008, who inquired about what was
23 meant by a modified work program; Plaintiff "stated that he didn't know
24 what the doctor meant by modified work duty." (Pl.'s Ex. 6 VZW
25 ANT000719.) It is undisputed that Verizon then advised Plaintiff to
26 "stay at home until [Verizon] could assess the parameters of his
27 modified duty." (SUF ¶ 40.)
28

"It is an employee's responsibility to understand his or her own physical or mental condition well enough to present the employer at the earliest opportunity with a concise list of restrictions which must be met to accommodate the employee." Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 266 (2000). "[A]n employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it." King v. Untied States Parcel Serv., 152 Cal. App. 4th 426, 443 (2007).

> [I]f a plaintiff wants [his] employer to consider the specific nature of [his] disability in crafting an accommodation, the burden rests on the plaintiff to inform the employer of those restrictions . . . . An employer cannot accommodate an employee's disability if it does not know how that disability affects the employee. In this case, Defendant accommodated Plaintiff as best it could by placing [him] on disability leave.

Goos v. Shell Oil Co., No. C 07-6130 CRB, 2010 WL 1526284, at *12 (N.D. Cal. 2010). Since Plaintiff has not shown he had a disability under FEHA or that Verizon failed to reasonably accommodate, Verizon's motion for summary judgment on Plaintiff's reasonable accommodation claim is granted.

### C. Retaliation Under CFRA

Verizon also seeks summary judgment on Plaintiff's retaliation claim, arguing Plaintiff "cannot establish any causal nexus between his request for CFRA leave and his termination from employment." (Mot. for Summ. J. 18:25-26.) Plaintiff counters "instead of granting [Plaintiff's] requested leave, [Verizon] terminated him." (Pl.'s Opp'n 15:2.)

"CFRA generally provides that it is unlawful for an employer to refuse an employee's request for up to 12 weeks of 'family care and medical leave' in a year. An employer is also forbidden from discharging or discriminating against an employee who requests family or medical

leave." Gibbs v. Am. Airlines, Inc., 74 Cal. App. 4th 1, 6 (1999) (citing Cal. Gov. Code § 12945.2(a)). To prove "retaliation in violation of CFRA" a Plaintiff must show: "(1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised [his] right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action . . . because of [his] exercise of [his] right to CFRA leave." Dudley v. Dep't of Transp., 90 Cal. App. 4th 255, 261 (2001).

The partes' dispute whether Plaintiff was fired *because of* his request for leave. Plaintiff argues the "temporal proximity" of his request and termination shows he was fired for filing his CFRA claim. Plaintiff argues he submitted his CFRA claim on January 9, 2008, and that the decision to terminate him was not made until January 10, 2008, or later. (Pl.'s Opp'n 19:19-20:4.) However, Plaintiff has not countered Verizon's evidence showing that it was not aware of Plaintiff's CFRA claim until January 10, 2008. (SUF ¶ 35; Nasser Decl. Ex. B Anthony Dep. 125:22-126:10; Nasser Decl. Ex. F.) Plaintiff presents a letter from MetLife Disability to Plaintiff dated January 9, 2009; however, this letter does not show that officials at *Verizon* were aware of Plaintiff's CFRA claim. (Pl.'s Ex. 7 VZW ANT000794; see also Nasser Decl. Ex. K Gonzalez Dep. ("MetLife will make th[e] determination" whether to grant FMLA or CFRA leave).) Further, Plaintiff has not countered Hall's deposition testimony that "the final approval . . . for [Plaintiff's] termination" came on "either the 8th or 9th of January" while she was in "a two-day leadership meeting." (Nasser Decl. Ex. L Hall Dep. 115:24-116:5.) Lastly, it is undisputed that Browning asked Hall to prepare a template recommending Plaintiff's termination, and that Hall prepared it on January 3, 2008, after Browning had "concluded all of the

11

investigation" with the exception of "a couple more calls [including to] Rascal's [restaurant]." (SUF ¶ 25; Nasser Decl. Ex. L Hall Dep. 57:9-59:24.) Further, whether Verizon waited until January 8 or 9 to make the final decision to terminate Plaintiff is insufficient to create an inference of retaliation since the uncontroverted evidence shows Verizon was investigating whether Plaintiff should be terminated before those dates. See Clark Cnty. Sch. Distr. v. Breeden, 532 U.S. 268, 272 (2001) (finding employer's knowledge of a lawsuit prior to transferring employee "immaterial" to retaliation claim "in light of the fact that [the employer] was contemplating the transfer before it learned of the suit" and "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality").

Plaintiff also argues "derogatory comments about the protected activity" show he was fired for filing his CFRA claim. (Pl.'s Opp'n 21:6-15.) Plaintiff presents emails sent between human resources staff members dated January 10 and 14, 2008, which state "[Plaintiff] called me claiming that his doctor has him out on disability" and, "Is [Plaintiff's] doctor aware of what his job entails?" (Pl.'s Ex. 6 VZW ANT000720, 732.) However, Plaintiff has not sufficiently explained how these statements are derogatory or how they support an inference of retaliation. Lastly, Plaintiff argues Verizon has an "unspoken policy of retribution for taking medical leave." (Pl.'s Opp'n 27:3-4.) In his deposition testimony, Plaintiff testified Verizon had a policy of retribution through which employees who took leaves of absence would "[n]ot be given a fair chance to go ahead and promote from within the company." (Pl.'s Mot. for Relief Ex. C Anthony Dep. 150:21-22.) However, this deposition testimony is insufficient to support drawing a reasonable inference in Plaintiff's favor that Verizon retaliated

against Plaintiff by firing him. Since Plaintiff has failed to raise a genuine issue of material fact that he was retaliated against for filing his CFRA claim, Verizon's motion for summary judgment on this claim is granted.

### D.  CFRA

Verizon seeks summary judgment on Plaintiff's CFRA claim, arguing Plaintiff was not entitled to protection from termination "for reasons not related to his CFRA claim." (Mot. for Summ. J. 20:4-15.) Plaintiff responds "Verizon did not fulfill its obligations under CFRA of guaranteeing [Plaintiff] a position" after he took leave under CFRA. (Pl.'s Opp'n 3:5-7.) "[A]n employee who requests CFRA leave or is on leave 'has no greater right to reinstatement or other benefits and conditions of employment' than an employee who remains at work." Neisendorf v. Levi Strauss & Co., 143 Cal. App. 4th 509, 519 (2006) (quoting California Code Regs. title 2, § 7297.2(c)(1)). "For this reason, even though [Plaintiff] took CFRA leave, [Plaintiff] had no greater protection against [his] employment being terminated for reasons not related to [his] CFRA request than any other employee at [Verizon]." Id. Since Plaintiff has failed to present evidence sufficient to permit drawing a reasonable inference that Verizon's stated reason for firing him was pretextual, Plaintiff has "failed to establish the requisite causal connection between [his] protected actions in taking [] CFRA . . . leave and the termination of [his] employment." Id. Therefore, Verizon's motion for summary judgment on Plaintiff's CFRA claim is granted.

### E.  Wrongful Termination in Violation of Public Policy

Verizon also seeks summary judgment on Plaintiff's wrongful termination in violation of public policy claim, arguing since

Plaintiff's underlying claims fail, "then so too must his claim for wrongful termination in violation of public policy." (Mot. for Summ. J. 20:23-25.) Since Plaintiff has failed to raise a genuine issue of material fact with respect to his FEHA and CFRA claims, his wrongful termination claim also fails. See Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 229 (1999) (stating "because [Plaintiff's] FEHA claim fails, his claim for wrongful termination in violation of public policy fails").

### IV.  Conclusion

For the stated reasons, Verizon's motion for summary judgment is GRANTED and judgment shall be entered in favor of Defendant.

Dated:   December 14, 2010

```
                          _____
                          GARLAND E. BURRELL, JR.
                          United States District Judge
```